IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| HANNAH E. BLEAVINS, Personal Representative for the Estate of Robert Earl Harris, and JAMES SHUMPERT, Sole Beneficiary of the Estate of Robert Earl Harris and as Residuary Beneficiary of the Harris Family Living Trust, ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | No. 2:22-cv-02178-TLP-cgc |
| v. ) ) | |
| SHARNETTA O'NEAL, Trustee and Residuary Beneficiary, et al., ) ) ) | |
| Defendants. ) | |

ORDER DENYING MOTIONS FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION AND DISMISSING COMPLAINT

On March 23, 2022, Plaintiffs Hannah E. Bleavins and James Shumpert sued here with a verified complaint requesting a temporary restraining order ("TRO") and preliminary injunction. (ECF No. 1.) For the reasons below, the Court **DENIES** Plaintiffs' motions and **DISMISSES** Plaintiffs' complaint.

## BACKGROUND

This action stems from a dispute related to the Estate of Robert Earl Harris (the "Estate") and the Harris Family Living Trust (the "Trust"), established in September 2013. (*Id.* at PageID 1–2.) Harris, who lived in Memphis, Tennessee before passing away in March 2021, was the grantor and beneficiary of the Trust and any trusts established under it. (*Id.* at PageID 1–2, 9.) According to the complaint, the Harris Estate is currently under administration in Probate Court

of Shelby County, Tennessee. (*Id.* at PageID 2.) The Shelby County Probate Court appointed Plaintiff Hannah E. Bleavins to serve as conservator of the Harris Estate in February 2017 and as personal representative of the Harris Estate in May 2021. (ECF Nos. 1 at PageID 1–2, 7; 1-2 at PageID 25; 1-6 at PageID 45.) Plaintiff James Shumpert is the sole beneficiary of the Harris Estate and a potential residuary beneficiary of the Trust. (ECF No. 1 at PageID 1–2.)

Plaintiffs filed this action against Defendants Sharnetta O'Neal, Allen Whitaker, Latisha Stamatelatos, Elvin Lofton, and St. Mark's Baptist Church Crenshaw ("St. Mark's"). (*Id.* at PageID 1–3.) According to the complaint, Defendant O'Neal is a potential residuary beneficiary of the Trust and is "acting as Successor Trustee" of the Trust. (*Id.* at PageID 3.) The complaint identifies Defendants Whitaker, Stamatelatos, Lofton, and St. Mark's as potential residuary beneficiaries of the Trust. (*Id.*) Defendants all reside in California.[1] (*Id.* at PageID 2–3.)

Plaintiffs request that the Court issue a TRO and "declare the Harris Family Living Trust, and any trusts established thereunder, to have been revoked during the lifetime of Robert Earl Harris." (*Id.* at PageID 2.) Plaintiffs also seek an order "requiring an immediate accounting of all trust funds and delivery of same to the Estate." (*Id.*)

The complaint identifies the assets within the Trust including several properties in California. (*Id.* at PageID 4.) The total estimated value of the Trust's assets exceeds $1,490,000. (*Id.* at PageID 4–5.) The complaint also outlines the Trust. (*Id.* at PageID 5–7.)

Plaintiffs assert that the Shelby County Probate Court's order appointing Bleavins as conservator of the Harris Estate removed certain rights from Harris and transferred them to Bleavins, including Harris's rights related to the Trust. (ECF Nos. 1 at PageID 7; 1-2 at PageID

---

[1] For St. Marks, the complaint alleges that the church's principal place of business is in California. (ECF No. 1 at PageID 3.)

28–30.)  The complaint claims that Defendant O'Neal "purported herself to be the Trustee of the Harris Family Trust after Robert Earl Harris was living in Memphis, Shelby County, Tennessee." (ECF No. 1 at PageID 7.)  Plaintiffs also assert that after declaring herself the trustee of the Trust, Defendant O'Neal breached several fiduciary duties she owed Harris, who was the Trust's sole beneficiary at the time.  (*Id.* at PageID 8.)

In June 2020, Bleavins, acting in her capacity as conservator of the Harris Estate, "executed a document titled Exercise of Power to Revoke the Harris Family Living Trust," and mailed a copy of that document to counsel for Defendant O'Neal.[2] (*Id.*)  By doing so, Bleavins "revoked in its entirety the Harris Family Trust and demanded the assets of same be transferred to the Conservatorship Matter." (*Id.*)  The next day, Plaintiffs moved for summary judgment in the Conservatorship Matter in Shelby County Probate Court.  (ECF Nos. 1 at PageID 8; 1-4 at PageID 36.)  That summary judgment motion remains pending.  (ECF No. 1 at PageID 9.)

Plaintiffs assert that Defendant O'Neal, "in her capacity as Trustee of the Harris Family Trust, has failed and/or refused to transfer assets" to Bleavins.  (*Id.*)  Harris passed away in March 2021, and the Shelby County Probate Court opened the Harris Estate and appointed Bleavins to represent the Estate in May 2021.  (ECF Nos. 1 at PageID 9; 1-6 at PageID 45.)

After alleging the facts described above, the complaint shifts to a discussion of the law, pivoting between probate law in California and Tennessee.  Plaintiffs assert that the Trust was revocable under California law when Bleavins exercised her power as conservator to revoke the Trust.  (ECF No. 1 at PageID 10.)  According to the complaint, "the Harris Family Trust instrument does not provide an explicitly exclusive method for revocation." (*Id.* at PageID 12.)

---

[2] Plaintiffs attached to the complaint a copy of the letter to counsel for Defendant O'Neal, attorney J. Stephen King.  (ECF No. 1-3 at PageID 32.)

And Plaintiffs assert that the Trust's assets are distributable to the conservator under California law. (*Id.* at PageID 13.)

The complaint then pivots to Plaintiffs' requests for injunctive relief. (*Id.* at PageID 14.) Plaintiffs allege that Defendant O'Neal and other "persons and/or charitable organizations made parties to the Conservatorship Matter," had local counsel in Tennessee representing them in the Shelby County Probate Court proceedings. (*Id.* at PageID 14.) And the complaint states that in June 2021, Defendant O'Neal's Tennessee counsel informed the Shelby County Probate Court that he would file the last will and testament of Robert Earl Harris later that same day. (*Id.* at PageID 15.)

But Defendant O'Neal's counsel never filed the purported will with the Tennessee court. (*Id.*) Instead, Defendant O'Neal sued in California Superior Court over the Trust distribution provisions (the "California Trust Petition"). (*Id.*) Defendant O'Neal also petitioned about the Harris Estate in California Superior Court (the "California Estate Petition"), requesting the probate of Harris's last will and testament. (*Id.*) The California court set a hearing on both petitions for March 25, 2022. (*Id.* at PageID 15–16.)

Plaintiffs request this Court to issue a TRO prohibiting Defendant O'Neal from proceeding with that hearing in California. (*Id.* at PageID 16–17.) According to the complaint, allowing O'Neal to proceed with the hearing "will produce inconsistent results and cause immediate and irreparable injury, loss or damage to the Plaintiffs," because the California Trust Petition requests relief "directly contrary to the Exercise of Power to Revoke" executed by Bleavins. (*Id.* at PageID 16.) While the revocation executed by Bleavins requires disbursement to Bleavins, the California Trust petition seeks distribution of trust property to Defendants. (*Id.*) Similarly, the complaint asserts that the California Estate Petition requests relief "directly

4

contrary to the intestate distribution of assets in the Tennessee Estate Petition." (*Id.* at PageID 17.) While the Tennessee Estate Petition seeks distribution of Estate assets to Plaintiff Shumpert, as Harris's sole heir at law, the California Estate Petition seeks distribution of Estate assets to the Trustee, Defendant O'Neal. (*Id.*)

Along with the TRO, Plaintiffs request that the Court "immediately require" Defendant O'Neal, as the Trust's successor trustee, "to give an accounting of all trust funds received and/or disbursed" from January 2016 to date. (*Id.* at PageID 20.) And Plaintiffs seek a declaratory judgment, asking the Court to declare that Bleavins revoked the Trust and other trusts established under it by executing the Exercise of Power to Revoke in June 2020. (*Id.* at PageID 20–21.) Lastly, Plaintiffs ask the Court to order Defendant O'Neal to "deliver all of said trusts' assets" to Bleavins. (*Id.* at PageID 21.)

## **LEGAL STANDARDS**

Under Rule 65(b) of the Federal Rules of Civil Procedure, a court may issue a TRO without written or oral notice to the opposing party only if the moving party specifies facts in an affidavit or verified complaint that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). And to issue a TRO without notice, the moving party's attorney must certify "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

The purpose of a TRO is to preserve the status quo pending a hearing on a preliminary injunction. *See Erard v. Mich. Secy. of State*, 905 F.Supp.2d 782, 791 (E.D. Mich. 2012) ("An ex parte TRO is only appropriate where the applicant would face irreparable harm so immediate that it would be improper to wait until after a preliminary injunction hearing to enjoin the non-

5

movant's conduct."); *see also Wilkins v. Daniels*, 913 F.Supp.2d 517, 532 (S.D. Ohio 2012) ("A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo."). Courts considering whether to issue a TRO or preliminary injunction consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Gale v. O'Donohue*, 751 F. App'x 876, 881 (6th Cir. 2018) (quoting *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001)); *see also Stein v. Thomas*, 672 F. App'x 565, 569 (6th Cir. 2016).

"These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). The party seeking the preliminary injunctive relief bears the "burden of proving that the circumstances clearly demand it." *Id.* (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). Now the Court will apply these factors to this case.

## ANALYSIS

**I.      Notice to Opposing Party**

To begin with, the Court should determine whether Plaintiffs satisfied the requirements of Rule 65(b). Plaintiff submitted a verified complaint as Rule 65(b)(1)(A) requires. And the Court will address the sufficiency of the allegations in that complaint below. But as explained above, Rule 65(b)(1)(B) prohibits issuing a TRO without notice to the opposing party unless "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Plaintiffs' complaint asserts that the Court should not require notice because Defendants knew about the Tennessee probate proceedings

related to the Harris Estate and Trust. (ECF No. 1 at PageID 17–19.) But Plaintiffs' counsel described no attempts at all to provide notice to Defendants of this motion for a temporary restraining order.

Notice of the Tennessee probate proceedings is different from notice of Plaintiffs' complaint and request for a TRO in this Court. What is more, the Court does not find compelling the reasons Plaintiff's counsel gives for forgoing any attempts to provide notice to Defendants. For one thing, Plaintiffs also do not allege when they learned the California court set the March 2022 hearing. The complaint states that Defendant O'Neal started the California proceedings in November 2021. But Plaintiffs did not move for a TRO in this Court until March 23, 2022, two days before the scheduled California hearing. If Plaintiffs knew about the California proceedings all along and still waited until the last moment to seek a TRO from this Court, Plaintiffs may not seek a TRO without at least attempting to provide notice.

Local Rule 65.1 requires "[c]ompliance with the notice provisions of Fed. R. Civ. P. 65." LR 65.1(2). And failure to satisfy these notice requirements is a basis to deny a motion for a TRO. *See*, *e.g.*, *Tugrul v. Weiner*, No. 1:15-cv-657, 2015 WL 6755306, at *2 (S.D. Ohio Nov. 4, 2015), *report and recommendation adopted*, 2015 WL 9013122 (S.D. Ohio Dec. 16, 2015). And so the Court finds that Plaintiff's request for a TRO does not comply with Rule 65(b) and the Local Rules of this Court. While this provides a basis to deny Plaintiffs' request, the Court will also address the four factors described above. These also provide a basis to deny the TRO.

## II.    Analysis of Four Factors

### A.    Irreparable Injury

The Court need only look at whether Plaintiff describes an immediate and irreparable harm here to deny this request for a TRO. *See Cunningham v. First Class Vacations, Inc.*, No.

7

3:16-CV-2285, 2019 WL 1306214, at *1 (M.D. Tenn. Jan. 11, 2019) ("When determining whether to issue a TRO, a threat of immediate, irreparable harm must be present." (citing Fed. R. Civ. P. 65(b)(1)(A))).

Plaintiffs claim that they will suffer irreparable harm absent a TRO because Defendants' petitions in California state court request relief unlike the relief sought by Plaintiffs in Tennessee probate court. (ECF No. 1 at PageID 16–17.) But this alleged harm is speculative. Plaintiffs will suffer harm only if the California state court grants Defendants' petitions. And the complaint alleges no obstacles preventing Plaintiffs from presenting their legal position to the California state court at the upcoming hearing. Plaintiff provided no specific facts showing that irreparable harm will likely result if the California hearing occurs. And speculative harms do not satisfy the irreparable injury requirement. *See Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 740 (E.D. Mich. 2010); *see also Winter v. NRDC, Inc.*, 555 U.S. 7, 21 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary [injunctive] relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." (emphasis in original) (citations omitted)). In sum, the Court finds that Plaintiffs have not established a threat of irreparable harm necessary to obtain a TRO.

### B.  Likelihood of Success on the Merits

The Court should also deny Plaintiffs' motions, because courts cannot issue a TRO or preliminary injunction "where there is simply no likelihood of success on the merits." *Gale*, 751 F. App'x at 881 (quoting *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)). The complaint raises issues related to probate proceedings in Tennessee and California state courts. And Plaintiff asks the Court to enjoin the California state court proceedings. But federal courts do not sit to oversee or supervise state court proceedings. Indeed, federal courts often

abstain from handling such matters, especially when a Plaintiff seeks to enjoin the state proceedings.  *See Younger v. Harris*, 401 U.S. 37 (1971) ("[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions.").

"The *Younger* [doctrine] requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state court proceedings." *Muhammad v. Paruk*, 553 F. Supp.2d 893, 897 (E.D. Mich. 2008).  The Sixth Circuit employs a three-factor test to determine whether the *Younger* doctrine applies—(1) whether the state proceeding constitutes an ongoing judicial proceeding; (2) whether the state proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge.  *See Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006).

The *Younger* doctrine "espouse[s] a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." *Kircher v. City of Ypsilanti*, 458 F. Supp.2d 439, 450 (6th. Cir. 2006).

> The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the State and their institutions are left free to perform their separate functions in their separate ways.  Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights.

*Id*.

As *Younger* urges, courts must trust each other's commitment to fairness and impartiality, resisting the urge to insert oneself into the fray.  "In our litigious era, multiple lawsuits arising from the same occurrence are commonplace.  *Younger* abstention is built upon common sense in the administration of a dual state-federal system of justice in such an era." *Id*. at 450–51 (citing *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998).

9

The Court finds that all *Younger* factors weigh heavily in favor of abstention, because the state court proceedings in both California and Tennessee are ongoing. And probate proceedings implicate important state interests. *See Lepard v. NBD Bank*, 384 F.3d 232, 237 (6th Cir. 2004) ("The matters presented in the complaint are clearly the subject of an on-going Ohio probate matter, which implicate important state interests."); *see also Kawecki ex rel. Marlowe v. Cnty. of Macomb*, 367 F. Supp. 2d 1137, 1145–46 (E.D. Mich. 2005) ("[T]he state probate courts are uniquely qualified to address the matters within their specific purview, and federal courts are reluctant to exercise jurisdiction where it might interfere with the functioning of the state probate courts in these areas."). And Plaintiffs raise no obstacles to presenting their claims before the California state court. As explained above, Plaintiffs allege no imminent threat related to the California proceeding.

What is more, there is a "probate exception" to diversity jurisdiction that applies here. *See Uzielli v. Frank*, 137 F. App'x 795, 798 (6th Cir. 2005); *see also Lepard*, 384 F.3d at 237. Under this doctrine, "[a] district court lacks subject matter jurisdiction over an action that is purely probate, even when the traditional requirements of diversity jurisdiction have been met." *Uzielli*, 137 F. App'x at 798 (citing *Lepard*, 384 F.3d at 237). For that reason, "a federal court may not exercise jurisdiction over a claim, even where all the normal jurisdictional requirements are met, if the court would be put in the position of probating a will or administering an estate." *Id.* at 799 (citing *Markham v. Allen*, 326 U.S. 490, 494 (1946)).

Three instances in courts should decline jurisdiction under the probate exception: (1) "where the federal court action would interfere with the probate proceedings in state court"; (2) "where the federal court action would assume general jurisdiction of the probate"; and (3) "where the federal court action would assert control of property in the custody of the state court."

10

*Id.* at 800 (citing *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002)).  No doubt this action falls within the probate exception to diversity jurisdiction.  This case involves ongoing California and Tennessee probate actions, and Plaintiffs ask the Court to rule on the merits of their probate petition.  Plaintiffs seek a declaratory judgment as to the validity and effect of Plaintiff Bleavins's revocation of the Trust.  (ECF No. 1 at PageID 20–21.)  And Plaintiffs ask the Court to order that Defendant O'Neal "deliver all of said trusts' assets" to Bleavins.  (*Id.* at PageID 21.)

At bottom, allowing Plaintiffs' claims to proceed would put this Court "in the position of probating a will or administering an estate."  *See Uzielli*, 137 F. App'x at 799.  And so Plaintiffs not only present no likelihood of success on the merits, but they also assert claims over which this Court lacks subject-matter jurisdiction.  The Court therefore lacks jurisdiction to even entertain Plaintiffs' claims.

The Court therefore **DENIES** Plaintiffs' requests for a TRO and a preliminary injunction.  And because the Court lacks subject-matter jurisdiction to address Plaintiff's claims about these probate matters, the Court **DISMISSES** the complaint.

## CONCLUSION

For the reasons explained above, the Court **DENIES** Plaintiffs' motions for a TRO and a preliminary injunction.  The Court also **DISMISSES** the complaint for lack of subject-matter jurisdiction.

**SO ORDERED**, this 24th day of March, 2022.

       s/Thomas L. Parker
       THOMAS L. PARKER
       UNITED STATES DISTRICT JUDGE